# Exhibit A

Robert B. Mobasseri (SBN 193193)
Amy L. Hajduk (SBN 230211)
Law Offices of Robert B. Mobasseri, PC
515 S. Figueroa Street, Suite 1200
Los Angeles, CA 90071
Tel: 213-282-2000
Fax: 213-282-3000

Attorneys for Plaintiffs Raymond Van Zant and
Ilse U. Van Zant

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

APR 04 2016

BY _____
JESSICA MORALES, DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

| | |
|---|---|
| RAYMOND VAN ZANT, an individual; ILSE U. VAN ZANT, an individual;<br><br>Plaintiffs,<br>vs.<br><br>CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, a limited liability company; SANTANDER CONSUMER USA INC., a corporation; SAFECO INSURANCE COMPANY OF AMERICA, a corporation; DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No.:   **CIVDS1604887**<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1) Violations of Consumers Legal Remedies Act<br>2) Violations of Unfair Competition Law<br>3) Fraud<br>4) Breach of Implied Warranty of Merchantability<br>5) Bond Liability<br><br>UNLIMITED JURISDICTION<br>JURY TRIAL DEMANDED |

$435
160404·0852

Plaintiffs Raymond Van Zant and Ilse U. Van Zant ("Plaintiffs") allege:

**GENERAL ALLEGATIONS**

1.    Defendant CARMAX AUTO SUPERSTORES CALIFORNIA, LLC (hereafter "Dealer") operates a used car dealership located at 4100 East Inland Empire Blvd., Ontario, in San Bernardino County, California.

2.    On information and belief, Defendant Santander Consumer USA, Inc. (hereafter "Lender") is a corporation that conducts business in San Bernardino County, California.

COMPLAINT
1

3.     On information and belief, Defendant Safeco Insurance Company of America (hereafter "Surety") is a corporation conducting business in San Bernardino County, California.

4.     Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise, of defendants sued herein as Does 1 through 100, inclusive, and thus names them under the provisions of California Code of Civil Procedure §474.

5.     Does 1 through 100, inclusive, are in some manner responsible for the acts, occurrences, and transactions set forth herein, and are liable to Plaintiffs.  Plaintiffs will set forth the true names and capacities of the fictitiously named defendants together with appropriate charging allegations when ascertained.  All acts of corporate employees/agents as hereinafter alleged were   authorized or ratified by an officer, director, or managing agent of the corporate employer/principal.

6.     This action arises out of Plaintiffs' purchase of a used vehicle from Dealer.  The form sales contract utilized by Dealer in the transaction included language from the FTC Holder Rule, 16 C.F.R. §433.1, et seq.:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

7.     Plaintiffs are informed and believe and based thereon allege that Lender is the holder in due course of the sales contract for the subject vehicle.  The FTC Holder Rule Notice makes Defendant Lender liable for all claims and defenses that could be raised against Defendant Dealer with respect to the sale of the subject vehicle.  It is on this basis that Lender is included in the identified causes of action set forth herein.

8.     On December 6, 2014, Plaintiffs purchased a used 2009 Dodge Journey from Dealer bearing VIN: 3D4GG67V59T222227 ("Vehicle").  As reflected in the Retail Installment Sales Contract ("Purchase Agreement") of the same date, the purchase price including all finance

1  charges, options and fees was $49,451.04, which included a $6,125.00 negative equity balance
2  on a trade-in vehicle.  The base cash price of the Vehicle was $16,996.00.  Plaintiffs were to pay
3  $888.82 for 72 months.  Plaintiffs were charged 25.92% interest on the financed amount of
4  $24,704.41.

5       9.    Dealer represented to Plaintiffs, through advertising, marketing, and a document
6  provided during the purchase negotiations, that all CarMax used vehicles offered for sale
7  undergo a "rigorous CarMax 125-point quality inspection" that includes the engine,
8  transmission, electrical system, brake and steering system, interior, accessories, and lighting
9  system.

10       10.    Dealer never disclosed to Plaintiffs that the Vehicle had been in an accident in or
11  about early 2012.

12       11.    Dealer did not disclose to Plaintiffs that a manufacturer's recall for the Vehicle's
13  specific year, make, and model was pending related to airbags and the electrical system.
14  According to the manufacturer's recall, the defect can affect the safe operation of the airbag
15  system and road conditions or other jarring event may cause the ignition switch to move out of
16  the run position, turning off the engine.  If the ignition key moves into the off or accessory
17  position, the engine will turn off and depower key safety systems including but not limited to air
18  bags, power steering, and power braking.  If any of these systems fail, there is increased
19  likelihood of a crash risk and/or injury resulting from a crash.

20       12.    Vehicle Code Section 24007(a)(1) states: "No dealer or person holding a retail
21  seller's permit shall sell a new or used vehicle that is not in compliance with this code and
22  departmental regulations adopted pursuant to this code."  Vehicle Code Section 11713(i)
23  prohibits car dealers from delivering a vehicle "if the vehicle does not meet all of the equipment
24  requirements of Division 12 (commencing with Section 24000)"—which subsections concern
25  safety-related equipment issues.  Generally, "[a]lthough a used car dealer does not insure the
26  safety of a car he sells, and is under no duty to disassemble the car to examine its parts, he must
27  make a reasonable inspection for defects that would make the car a menace on the highways."
28

13.     CarMax's representations that the Vehicle underwent a "rigorous 125-point quality inspection" were misleading, deceptive, and false because an inspection that fails to discover a previous accident and fails to discover a pending manufacturer's recall related to airbags and the electrical system cannot be considered "rigorous." CarMax's advertisements, marketing, and sale of the subject Vehicle as safe and having passed a rigorous 125-point inspection was deceptive and fraudulent given the potentially lethal safety defects that were being addressed by the manufacturer's recall.

14.     Plaintiffs have fully complied with the contractual obligations under the Purchase Agreement, including payment of the down payment and monthly payments.

15.     Plaintiffs through counsel have executed an Affidavit of Venue that is filed concurrently with this complaint.

## FIRST CAUSE OF ACTION

Violations of Consumers Legal Remedies Act, Civil Code §1750 *et seq.*

Against Dealer, Lender, and Does 1-50

16.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

17.     The Vehicle constitutes "goods" bought for primarily personal, family, or household purposes per Civil Code §1761(a). Plaintiffs are each a "consumer" per Civil Code § 1761(d). The advertisement and sale of the Vehicle to Plaintiffs is a "transaction" per to Civil Code § 1761(e).

18.     The Dealer violated the Consumers Legal Remedies Act as follows: passing off goods or services as those of another (Civil Code §1770(a)(1)); misrepresenting the source, sponsorship, approval, or certification of goods or services (Civil Code §1770(a)(2)); misrepresenting the affiliation, connection, or association with, or certification by, another (Civil Code §1770(a)(3)); representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have (Civil Code §1770(a)(5)); representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another (Civil Code §1770(a)(7));

advertising goods or services with intent not to sell them as advertised (Civil Code §1770(a)(9));
representing that a transaction confers or involves rights, remedies, or obligations which it does
not have or involve, or which are prohibited by law (Civil Code §1770(a)(14)); representing that
the subject of a transaction has been supplied in accordance with a previous representation when
it has not (Civil Code §1770(a)(16)).

19.     The above statutory provisions were violated due to the Dealer:

(a) misrepresenting the Vehicle's condition and history;

(b) making misrepresentations about the nature, extent, scope, and quality of the
"rigorous 125-point quality inspection" which CarMax advertised and represented the
Vehicle had undergone;

(c) concealing and/or failing to disclose the Vehicle's prior accident history;

(d) failing to perform a safety inspection of the Vehicle prior to sale to Plaintiffs;

(e) failing to disclose the pending manufacturer's recall related to airbags, electrical
system, and safety components.

20.     Plaintiffs seek an order prohibiting the Dealer from engaging in the acts described
above in this Complaint and requiring the Dealer to refrain from the acts and practices set forth
above. Plaintiffs also seek an order requiring the Dealer to identify or make a reasonable attempt
to identify all consumers similarly situated including, but not limited to, reviewing all sales
contracts and lease contracts and/or repair estimates and repair invoices for the last four years to
determine any and all instances of the Dealer's acts and practices as set forth above.

21.     Plaintiffs are informed and believe that the Dealer engaged in the aforementioned
activity on a regular basis such that these activities and unlawful acts constitute a pattern and
practice of doing business in violation of the Civil Code.

22.     The Dealer's violations of Civil Code § 1770 present a continuing threat to
members of the public in that the Dealer is continuing to engage in the practices alleged herein,
and will not cease until an injunction is issued by this Court. Plaintiffs therefore seek injunctive
relief.

23.     Pursuant to Civil Code § 1780, in addition to the remedies set forth above,
Plaintiffs are entitled to recover attorney's fees and costs.

## SECOND CAUSE OF ACTION

Violations of Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*

Against Dealer, Lender, and Does 1-50

24.     Plaintiffs incorporate by reference each and every allegation set forth in the
preceding paragraphs of this Complaint.

25.     The statutory violations and tort claims alleged herein constitute unlawful, unfair
and fraudulent acts which constitute unlawful business practices within the meaning of Business
and Professions Code § 17200, *et seq.*

26.     The Dealer's acts and practices have deceived and/or are likely to deceive
members of the consuming public, continue to the present day, and also present a threat to
Plaintiff and the general public in that the Dealer has failed to publicly acknowledge the
wrongfulness of the Dealer's actions and provide full equitable injunctive relief and restitution as
required by statute.

27.     Pursuant to Business and Professions Code § 17203, Plaintiffs seek an order from
this Court enjoining the Dealer from such acts of unfair competition, ordering the Dealer to
engage in a corrective advertising campaign, and ordering the Dealer to institute corrective
policies and procedures.

28.     Plaintiffs additionally request an order from the Court requiring that the
defendants provide complete restitution so as to prevent the defendants from benefitting from the
practices that constitute unfair competition or the use or employment of any monies resulting
from the sale of such misrepresented goods and requiring the payment of restitution of any
monies as may be necessary to restore to any person any money or property which may have
been acquired by means of such acts of unfair competition.

///

## THIRD CAUSE OF ACTION

Fraud

Against Dealer, Lender, and Does 1-50

29.     Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

30.     The Dealer made multiple misrepresentations and/or concealments in negotiating the sale of the Vehicle to Plaintiff, including:

a) misrepresenting the Vehicle's condition and history;

b) making misrepresentations about the nature, extent, scope, and quality of the "rigorous 125-point quality inspection" which CarMax advertised and represented the Vehicle had undergone;

c)  concealing and/or failing to disclose the Vehicle's prior accident history;

d) failing to perform a safety inspection of the Vehicle prior to sale to Plaintiffs;

e)     failing to disclose the pending manufacturer's recall related to airbags, electrical system, and safety components.

31.     Plaintiffs reasonably relied on the Dealer's representations during the negotiations and sale of the Vehicle and in reliance on those representations agreed to purchase the Vehicle. Further, Plaintiffs were in no position to know or understand the items or information concealed.

32.     Plaintiffs have suffered economic damages to be determined at trial, proximately caused by the Dealer's misrepresentations and concealments and Plaintiffs' reliance thereon. Further, the Dealer acted with malice, oppression, and/or fraud towards Plaintiffs, within the meaning of Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages.

33.     Defendants' corporate officers, directors, or managing agents personally acted with oppression, fraud, or malice; had advance knowledge of the unfitness of the employees who acted towards Plaintiffs with malice, oppression, or fraud; employed such employees with conscious disregard for the rights or safety of others; and/or themselves authorized or ratified the wrongful conduct.

COMPLAINT
7

## FOURTH CAUSE OF ACTION

Breach of Implied Warranty of Merchantability

Against Dealer, Lender, and Does 1-50

34.　Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

35.　Dealer's implied warranty of merchantability accompanied the sale of the Vehicle to Plaintiffs and this implied warranty meets the definition of "implied warranty" as set forth in Civil Code §1791.1(a) of the Song-Beverly Act.

36.　Plaintiffs purchased a Vehicle from Dealer who was in the business of selling and leasing motor vehicles to retail consumers.

37.　The Vehicle was not of the same quality as those generally acceptable in the trade and/or was not fit for the ordinary purposes for which such goods are used. The Vehicle was unsafe and had substantial defects at the time of sale.

38.　Plaintiffs are entitled to damages and attorney's fees and costs under the Song-Beverly Act for Dealer's breach of the implied warranty of merchantability

## FIFTH CAUSE OF ACTION

Bond Liability

Against Surety and Does 51-60

39.　Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

40.　Defendant Surety issued motor vehicle dealer bond number 6305675 effective February 1, 2005 to Dealer to fulfill Dealer's obligation under Vehicle Code § 11710.

41.　The bond issued to Dealer was in effect on the dates of the incidents alleged in this Complaint. Pursuant to Vehicle Code §§ 11710(a) and 11711, the bond issued to Dealer is payable to "a purchaser," in the case of "fraud." Plaintiffs are each a purchaser within the meaning of Vehicle Code § 11710(a) and §11711.

42.　As set forth in the causes of action herein, Dealer is liable for fraud, and Plaintiffs are in possession of a written instrument furnished by the licensee, containing stipulated

1  provisions and guarantees which the Plaintiffs believe have been violated by the licensee.  Surety
2  is liable under the bond for damages based on Dealer's acts or omissions.

3      WHEREAS, Plaintiffs pray for relief as follows:

4  **On the First Cause of Action:**
5  1.  For injunctive relief permitted under Civil Code §1780;
6  2.  For attorney's fees and costs;
7  3.  Any other relief that the Court deems just and proper.

8  **On the Second Cause of Action:**
9  1.  For restitution of all monies expended;
10  2.  For injunctive relief permitted under B&P Code §17203;
11  3.  Attorney's fees and costs under Code of Civil Procedure § 1021.5;
12  4.  Any other relief as the Court deems just and proper.

13  **On the Third Cause of Action:**
14  1.  For actual and punitive damages;
15  2.  Any other relief the Court deems just and proper.

16  **On the Fourth Cause of Action:**
17  1.  For rescission of the sales contract and reimbursement of all monies paid;
18  2.  For consequential and incidental damages;
19  3.  For reasonable attorney's fees and costs;
20  4.  Any other relief as the Court deems just and proper

21  **On the Fifth Cause of Action:**
22  1.  For damages available pursuant to statute;
23  2.  For reasonable attorney's fees and costs;
24  3.  Any other relief as the Court deems just and proper

25  Dated: March 29, 2016     LAW OFFICES OF ROBERT B. MOBASSERI, PC
26      By: _____
27      Robert B. Mobasseri
    Amy L. Hajduk
28      Attorneys for Plaintiffs Raymond Van Zant and Ilse U. Van Zant

COMPLAINT
9